The Honorable Judge Thomas T. Glover
Chapter 11
Hearing Date: June 18, 2010
Hearing Time: 9:30 am
Hearing Place: Courtroom 7106
Response Date: June 11, 2010

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| In Re: | No. 09-14441-TTG |
|---|---|
| WARDAL W HOUSTON AND CAROL L HOUSTON<br><br>Debtors. | OBJECTION TO CONFIRMATION DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE INDYMAC IMSC MORTGAGE LOAN TRUST 2007-F2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-F2 UNDER THE POOLING AND SERVICING AGREEMENT DATED JUNE 1, 2007, THROUGH ITS SERVICING AGENTS ONE WEST BANK, FSB AS PURCHASER OF THE LOANS AND OTHER ASSETS OF INDYMAC BANK, F.S.B. |

Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-F2, Mortgage Pass-Through Certificates, Series 2007-F2 under the Pooling and Servicing Agreement dated June 1, 2007, through its servicing agents One West Bank, FSB as purchaser of the loans and other assets of IndyMac Bank, F.S.B.,.., a creditor and party in interest with regard to these proceedings ("Creditor") objects to confirmation of the Chapter 11 Plan (the "Plan") filed by Wardal W. Houston and Carol L. Houston ("Debtors") as violating the provisions of 11 U.S.C. § 1125(b)(5).

**I. BACKGROUND**

On or about February 22, 2007, Debtors executed a Promissory Note (the "Note") in favor of First Magnus Financial Corporation, an Arizona corporation ("First Magnus"), in the principal

Objection to Confirmation
Page - 1

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ◆ FACSIMILE (425) 458-2131

amount of $450,000.00. A copy of the Note is attached as Exhibit A. The indebtedness under the Note was secured by a Deed of Trust (the "Deed") encumbering real property located at 617 26th Avenue East, Seattle, WA 98112 (the "Property"), which was executed by the Debtors on or about February 22, 2007 and recorded under King County Recording No. 20070223000865. A copy of the Deed is attached as Exhibit B. The Deed named Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary, solely as nominee for lender First Magnus, its successors and assigns. First Magnus thereafter indorsed the Note in blank and delivered the Note to Creditor. Creditor is in possession, either physically or through the agency of a document custodian, of the original indorsed Note.

As set forth in the Proof of Claim filed by Creditor, Debtors are in arrears of payment on the Note since August 2008. The total pre-petition arrearage is $35,538.85. In addition, Debtors are in arrears for post-petition payments. Post-petition arrears total $45,335.63.

Debtor's First Amended Plan of Reorganization assigns Creditor's claim to Class 12 and proposes that "[t]he value the Class 12 claim[1] shall be $350,000, less any senior secured debt, based upon the current market valuation of said property," and further proposes that the interest rate on the claim "shall be set at 4.5% or such rate of interest as the Court shall find satisfies the requirements of 11 U.S.C. § 1129(b)(2)(A) for five years following confirmation of the Plan. Thereafter the interest rate shall adjust to 6.0% for the remaining term until the New Maturity Date." The Plan also proposes extending the term of the Note to 360 months after the Effective date of the Plan. As the Effective Date is defined as 30 days after the entry of the Confirmation Order, the New Maturity

---

[1] So in original. Probably should be "The value *of the collateral securing* the Class 13 claim . . ."

Objection to Confirmation
Page - 2

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ◆ FACSIMILE (425) 458-2131

date would be not earlier than July 18, 2040. In contrast, interest under the original terms of the Note was 7.125%, and the Note was due on March 1, 2037.

## II. ARGUMENT

### A. The Collateral Values Asserted in the Plan are Too Low

The Debtors' asserted value appears to be too low, particularly in view of the King County Assessor's tax valuation of $418,000.00. A copy of the King County Assessor's eReal Property Report is attached hereto as Exhibit C. Creditor has obtained a Broker's Price Opinion, which is attached hereto as Exhibit D, which shows that a "quick sale value" in "as-is" condition would be $472,500.00, and that a normal market sale value in "as-is" condition would be $525,000.00

Section 1123(b)(5) provides that "Subject to subsection (a) of this section, a plan may – [m]odify the rights of holders of secured claims." Included in the rights that can be modified is the amount of the secured claim. This is determined under 11 U.S.C. § 506(a)(1), which provides, "An allowed claim of a creditor secured by a lien on property in which the estae has an interest, . . . is a secured claim to the extent of the value of suchcreditor's interest in th e estate's interest in such property . . . and is an unsecured claim to the estent that the value of such creditor's interest . . .is less than tne amount of such allowed claim.

Creditor has been attemting to contact Debtor's attorney to obtain access to the interior of the Property so that a thorough appraisal can be performed. Creditor requests that an evidentiary hearing be scheduled so that Creditor and Debtors can present evidence as to the fair market value of the Property.

Objection to Confirmation
Page - 3

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ⬥ FACSIMILE (425) 458-2131

### B. The Interest Rate Proposed is Insufficient in View of the Risk Involved and the Plan does not meet the "Fair and Equitable" Test.

Creditor oncedes that, with the exception of the residential property, § 1123(b)(5) permits a debtor to modify the rights of holders of claims secured by real property that is not the debtor's principal residence. However, Creditor objects to the Debtor's proposed interest terms.

Under 11 U.S.C. § 1129(b)(2)(A)(i)(II), in order to be confirmed, a plan must be "fair and equitable." With respect to a class of secured claim, the "fair and equitable" test includes a requirement that the plan provides "that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." The "value, as of the effective date of the plan," is also referred to as the "present value." In order to determine the present value of a stream of future payments, an appropriate discount rate is applied. The discount rate (or interest rate) proposed by the Debtor is 4% over the first 5 years following confirmation, increasing to 6% for the next 25 years. That rate is far too low for the risk involved. No lender would make a loan on non-owner-occupied real property, with no money down, to a failed real estate speculator in bankruptcy. Such a loan would violate all standards of prudent underwriting. The appropriate discount rate must reflect the level of risk of default, the creditworthiness of the borrower, and the quality of collateral.

In the context of a Chapter 13 case, the the Supreme Court enunciated the test for the cramdown interest rate in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004):

Objection to Confirmation
Page - 4

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ⬥ FACSIMILE (425) 458-2131

> although § 1325(a)(5)(B) entitles the creditor to property whose present value objectively equals or exceeds the value of the collateral, it does not require that the terms of the cramdown loan match the terms to which the debtor and creditor agreed prebankruptcy, nor does it require that the cramdown terms make the creditor subjectively indifferent between present foreclosure and future payment. Indeed, the very idea of a "cramdown" loan precludes the latter result: By definition, a creditor forced to accept such a loan would prefer instead to foreclose. Thus, a court choosing a cramdown interest rate need not consider the creditor's individual circumstances, such as its prebankruptcy dealings with the debtor or the alternative loans it could make if permitted to foreclose. Rather, the court should aim to treat similarly situated creditors similarly, and to ensure that an objective economic analysis would suggest the debtor's interest payments will adequately compensate all such creditors for the time value of their money and the risk of default.

*Id.*, at 476.

The Court went on to outline its approved approach to determining the appropriate interest rate:

> The formula approach has none of these defects. Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense. Moreover, starting from a concededly *low* estimate and adjusting *upward* places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing (such as evidence about the "liquidity of the collateral market," *post,* at 1973 (SCALIA, J., dissenting)). Finally, many of the factors relevant to the adjustment fall squarely within the bankruptcy court's area of expertise.

*Id.*, at 478-479. Accordingly, Creditor requests that if the Court is inclined to confirm the Plan, the Court set a hearing at which the Debtor and any creditors may present evidence about the appropriate risk adjustment.

Objection to Confirmation
Page - 5

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ⬥ FACSIMILE (425) 458-2131

C. <u>The Debtors have not Fulfilled their Duties as Debtors-in-Possession under Chapter 11</u>

11 U.S.C. § 1107(a) provides that a Chapter 11 debtor-in-possession "shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter." Among the duties of a trustee are the duties enumerated in 11 U.S.C. § 363(c)(4), which provides that "[e]xcept as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any csh collateral in the trustee's possession, custody, or control." "Cash collateral" is defined in § 363(a) as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

Here, part of the Deed of Trust securing the Debtors' obligations to Creditor was a "1-4 Family Rider (Assignment of Rents)," (the "Rider"), which was executed in connction with the Deed of Trust. Paragraph G of the Rider provides, in part, that "Borrower absolutely and unconditionally assignes and tranfers to Lender all the rents and revenues (Rents") of the Property, regardless of to whom the Rents of the Property are payable." Under 11 U.S.C. § 552(b)(1),

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, the such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law.

Objection to Confirmation
Page - 6

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ♦ FACSIMILE (425) 458-2131

In this case, the Rider extends Creditor's security interest to rents and revenues of the Property, and such rents are cash collateral, for which the Debtors as debtor-in-possession have an independent and ongoing duty to segregate and account for. The Debtor's Financial Report for the month of April, 2010 lists rental income from "26th Ave" property of $1,495.00. Given that the case was filed on May 7, 2009, and assuming that the Debtors have been collecting that amount from that date, a total of $17,940 would have been collected. Since no payments on the obligation secured by the Property have been made during the entire time the case has been pending, the Debtors   the Debtors' Plan should provide for turnover of all cash collateral produced by the Property, but does not do so. Accordingly, their plan should not be confirmed.

### III  CONCLUSION

Because the Property securing Creditor's claim is the Debtor's principal residence for the purposes of the antimodification provision of 11 U.S.C. § 1125(b)(5), the Plan cannot be confirmed. Creditor respectfully requests that the Court deny confirmation of the Plan.

Dated this __11_ day of June 2010.

**ROUTH CRABTREE OLSEN, P.S.**

By: /s/ Mark Moburg
    Mark Moburg, WSBA# 19463
    Attorneys for Wells Fargo Bank, N.A.

Objection to Confirmation
Page - 7

ROUTH CRABTREE OLSEN, P.S.
3535 FACTORIA BLVD. SE, SUITE 200
BELLEVUE, WA 98006
TELEPHONE (425) 458-2121 ◆ FACSIMILE (425) 458-2131